## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

EDWARD L. YOUNG,

                  Petitioner,            :     Case No. 2:24-cv-1564

    - vs -                           District Judge Michael H. Watson
                                        Magistrate Judge Michael R. Merz

WILLIAM COOL, WARDEN, Ross
  Correctional Institution,

                                   :

                Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Edward Young pursuant to 28 U.S.C. § 2254, is before the Court for decision on the merits on the following filings:  the Petition (ECF No. 1), the State Court Record (ECF No. 8), and the Return of Writ (ECF No. 9).  Although the Court set a reply deadline and extended it on Petitioner's Motion to December 1, 2024 (ECF No. 12), Petitioner failed to file a reply by the deadline, which has now passed.  The case is therefore ripe for decision.

**Litigation History**

On February 1, 2021, a Coshocton County Grand Jury indicted Petitioner on two counts of aggravated murder and one count of having weapons while under disability. (Indictment, State Court Record, ECF No. 8, Ex. 1).  The victims were Joshua Jones, Petitioner's brother-in-law (Count One)

and his spouse Martha Young (Count Two). Each aggravated murder count contained a firearm specification, a repeat violent offender specification, and a forfeiture of a weapon specification. *Id.* Petitioner initially pleaded not guilty, later changed his plea to not guilty by reason of insanity, and then withdrew the NGRI plea after the trial court disallowed it because he had refused to participate in a mental evaluation. A trial jury found Petitioner guilty on all counts and specifications, but the forfeiture and repeat violent offender specifications were dismissed post-verdict. Young was sentenced to consecutive terms of life imprisonment without the possibility of parole for the murder of his spouse and brother-in-law, and three years for each of the firearm specifications (Judgment, State Court Record 8, Ex. 12).

Represented by new counsel, Petitioner appealed to the Ohio Fifth District Court of Appeals, raising the following Assignments of Error:

1. The trial court erred and deprived appellant of due process of law as guaranteed by the fourteenth amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of aggravated murder and having weapons while under disability as those verdicts were not supported by sufficient evidence and were also against the manifest of the evidence.

2. The trial court erred to the prejudice of appellant by closing and locking the courtroom during his jury trial, in violation of his right to a public trial and due process of law pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution.

3. The trial court erred to the prejudice of appellant by permitting testimony at his jury trial in violation of Doyle v. Ohio, thereby depriving him of due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution.

4. Appellant's trial counsel was ineffective thereby depriving him of the right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

2

(Appellant's Brief, State Court Record, ECF No. 8, Ex. 14, PageID 83). The Fifth District overruled

these assignments of error and affirmed the conviction. *State v. Young*, 2022-Ohio-4726 (Ohio App.

5th Dist. Dec. 28, 2022). The Ohio Supreme Court declined jurisdiction over a subsequent appeal.

*State v. Young*, 169 Ohio St.3d 1491 (2023).

On March 27, 2023, Young filed a pro se application to reopen his appeal pursuant to App. R.

26(B). (State Court Record, ECF No. 8, Ex. 22). Young claimed ineffective assistance of appellate

counsel when counsel failed to raise the following assignments of error:

> 1. Trial counsel rendered ineffective assistance for failing to move to bifurcate the charge of having a weapon while under disability denying Appellant's right to a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Art. I Section 10 of the Ohio Constitution.
>
> 2. Trial counsel rendered ineffective assistance for failing to object to autopsy photos of the deceased being introduced during trial and submitted to the jury for deliberations violating Appellant's right to effective assistance of counsel and denying Appellant's right to a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Art. I Section 10 of the Ohio Constitution.
>
> 3. Trial counsel rendered ineffective assistance in failing to request that Juror No. 10 be replaced by an alternate for sleeping during trial violating Appellant's right to effective assistance of counsel and denying Appellant's right to a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Art. I Section 10 of the Ohio Constitution.
>
> 4. The cumulative effect of ineffective assistance of trial counsel deprived the Appellant of a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Art. I Section 10 of the Ohio Constitution.

*Id.* The Fifth District denied relief and the docket does not reflect a further appeal to the Supreme

Court of Ohio.

Petitioner filed his Petition in this Court by depositing it in the prison mailing system on

3

March 25, 2024 (ECF No. 1, PageID 15).  He pleads the following Grounds for Relief:

> **Ground One**: The trial court erred and deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of aggravated murder and having weapons while under disability as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.
>
> **Ground Two**: The trial court erred to the prejudice of Appellant by closing and locking the courtroom during his jury trial, in violation of his right to a public trial and due process of law pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution.
>
> **Ground Three**: A criminal Defendant's right to due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution, is violated where the State elicits testimony reflecting the Defendant's invocation of his right to legal counsel.
>
> **Ground Four**: Trial Counsel was ineffective in failing to object to substantive violations of the Defendant's constitutional rights, where those objections would have likely led to a different outcome which is a denial of the right to due process and effective assistance of trial counsel, as guaranteed by the Sixth and Fourteenth Amendments of United States Constitution and the Ohio Constitution.

(Petition, ECF No. 1).

# Analysis

## Ground One:  Sufficiency and Weight of the Evidence

In his First Ground for Relief, Petitioner claims he was convicted on insufficient evidence and against the manifest weight of the evidence in violation of both the Ohio and federal Constitutions.

Federal habeas corpus is available only to correct federal constitutional violations.  28

4

U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring). The Magistrate Judge will therefore not attempt to analyze Petitioner's claims of violation of the Ohio Constitution in either this or the other Grounds for Relief.

A conviction against the manifest weight of the evidence does not violate the United States Constitution and therefore a claim to that effect is not cognizable in federal habeas corpus. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). This Report will therefore not attempt to analyze Petitioner's manifest weight claim.

An allegation that a verdict was entered upon insufficient evidence does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting

*Jackson*).  This standard "must be applied with explicit reference to the substantive elements of

the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule

was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge

should be assessed against the elements of the crime, not against the elements set forth in an

erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to groups
> who might view facts differently than we would. First, as in all
> sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.
> See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.
> Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-
> evaluate the credibility of witnesses, or substitute our judgment for
> that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th
> Cir. 1993). Thus, even though we might have not voted to convict a
> defendant had we participated in jury deliberations, we must uphold
> the jury verdict if any rational trier of fact could have found the
> defendant guilty after resolving all disputes in favor of the
> prosecution. Second, even were we to conclude that a rational trier
> of fact could not have found a petitioner guilty beyond a reasonable
> doubt, on habeas review, we must still defer to the state appellate
> court's sufficiency determination as long as it is not unreasonable.
> See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

Petitioner raised his evidentiary claims together in his first Assignment of Error on direct appeal and the Fifth District decided it as follows:

> {¶20} In his first assignment of error, appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.
>
> {¶21} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, *reconsideration denied,* 165 Ohio St.3d 1458, 2021-Ohio-4033, 176 N.E.3d 767, and *cert. denied,* 213 L.Ed.2d 1005, 142 S.Ct. 2766, citing *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Instead, it asks whether the evidence against a defendant, *if believed*, supports the conviction. *Id.,* citing *Thompkins* at 390, 678 N.E.2d 541 (Cook, J., concurring).
>
> {¶22} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of

witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned, and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶23} Appellant was found guilty of two counts of aggravated murder pursuant to R.C. 2903.01(A), which states in pertinent part, "No person shall purposely, and with prior calculation and design, cause the death of another." " 'Prior calculation and design' are not defined in the Revised Code but is more than just an instantaneous decision to kill; it encompasses planning 'a scheme designed to carry out the calculated decision to cause the death.' " *State v. Calvert*, 5th Dist. Guernsey No. 03CA19, 2004-Ohio-6366, ¶ 49, citing *State v. Jones,* 91 Ohio St.3d 335, 348, 2001-Ohio-57, 744 N.E.2d 1163, internal citations omitted. Prior calculation and design are considered "a more stringent element than premeditation." *Id., citing State v. Green,* 90 Ohio St.3d 352, 357, 738 N.E.2d 1208, internal citation omitted.

{¶24} Appellant argues there is no evidence of prior calculation and design in the instant case; he did not recall the murders and his motive was unclear, and he asserts that "* * *the shootings appear to be the instantaneous result of an argument between the three parties." Brief, 4.

{¶25} In *State v. Taylor*, 78 Ohio St.3d 15, 18–20, 676 N.E.2d 82, 88–89 (1997), the Ohio Supreme Court considered the meaning of "prior calculation and design," noting the following at page 19: * * * *

According to [the 1973 Technical Committee Comment to Am.Sub.H.B. No. 511, a Legislative Service Commission summary], "the phrase 'prior calculation and design' [was employed] to indicate studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim. Neither the degree of care nor the length of time * * * are critical factors in themselves, but they must amount to more than momentary deliberation."

In *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, at paragraph one of the syllabi, we agreed that " 'prior calculation and design' is a more stringent element than the 'deliberate and premeditated malice'

which was required under prior law." The General Assembly's apparent intention "was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." *Id.,* 56 Ohio St.2d at 11, 10 O.O.3d at 6, 381 N.E.2d at 193. Also, in *Cotton,* at paragraph two of the syllabus, we held that "[i]nstantaneous deliberation is not sufficient to constitute 'prior calculation and design.' "
* * * *.
In *State v. Jenkins,* 48 Ohio App.2d at 102, 2 O.O.3d at 75, 355 N.E.2d at 828, the court of appeals found three factors important in determining whether prior calculation and design exists: (1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost instantaneous eruption of events"?
Our review of the preceding cited cases convinces us that it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of "prior calculation and design." Instead, each case turns on the particular facts and evidence presented at trial.

*State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997).

{¶26} In the instant case, appellant knew both victims well, and his relationship with Jane had become strained over appellant's belief that Jane had an incestuous relationship with John, an allegation he made to Andrews and to which he obliquely referred when Mary found him at the bottom of the steps, standing over John's body.

{¶27} The evidence admitted at trial also showed deliberation and planning. Appellant told Andrews he recalled Jane leaving the house in the direction of John's house; appellant re-entered the residence before following her. Police found an empty firearm case in appellant's house with the make, model, and serial number matching the weapon that killed Jane and John.

{¶28} The final issue is whether appellant acted with "more than momentary deliberation," or whether the act was "an almost instantaneous eruption of events." *Taylor,* supra. * * * *. Appellant retrieved the weapon, followed Jane to John's residence, and argued with both before he shot them. "Prior calculation and design can be found even when the killer quickly conceived and executed the plan

9

to kill within a few minutes," *State v. Coley,* 93 Ohio St.3d 253, 264, 754 N.E.2d 1129 (2001), as long as the killer's actions "went beyond a momentary impulse and show that he was determined to complete a specific course of action," *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 46. Appellant fired ten shots inside John's residence, and one was to John's head. A shot to the head at close range "bespeaks a calculated, execution-style murder." *State v. Campbell,* 90 Ohio St.3d 320, 330, 738 N.E.2d 1178, 1193 (2000), citing *State v. Palmer,* 80 Ohio St.3d 543, 570, 687 N.E.2d 685 (1997).

{¶29} Although "the events here took place in short order," a juror could reasonably infer appellant "had adopted and carried out a plan to kill." *Jones,* supra, 2021-Ohio-3311, at ¶ 26. Appellee presented sufficient evidence of prior calculation and design, and the jury did not lose its way in finding appellant guilty of aggravated murder.

{¶30} Appellant's convictions upon two counts of aggravated murder are supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.

*State v. Young, supra*.

Under the AEDPA when a state court decides a federal constitutional issue on the merits, its decision is entitled to deference unless it is an objectively unreasonable application of clearly established federal law as embodied in precedent from the United States Supreme Court. 28 U.S.C. § 2254(d)(1). The Ohio Supreme Court has recognized the authority of *Jackson* in *Jenks, supra.* Upon review under § 2254(d)(1), the Magistrate Judge concludes the Fifth District's decision is not an objectively unreasonable application of *Jackson*, particularly in the absence of a reply by Petitioner. Ground One is without merit.

**Ground Two: Denial of Right to Public Trial**

In his Second Ground for Relief, Petitioner asserts he was denied his right to a public trial

10

when the trial judge prohibited ingress and egress from the courtroom during testimony of the deputy coroner.

Petitioner presented this claim as his Second Assignment of Error on direct appeal and the Fifth District decided it as follows:

> {¶31} In his second assignment of error, appellant argues the trial court committed structural error in closing the courtroom to the public during the testimony of the coroner. We disagree.
>
> {¶32} The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Section 10, Article I of the Ohio Constitution also guarantees an accused the right to a public trial. The right to a public trial is not absolute, and in some instances must yield to other interests, such as those essential to the administration of justice. A trial judge has authority to exercise control over the proceedings and the discretion to impose control over the proceedings. Nonetheless, the abridgement of a defendant's right to a public trial may occur only when necessary, and any closure must be narrowly drawn and applied sparingly. *See, State ex rel. The Repository, Div. of Thompson Newspapers, Inc. v. Unger,* 28 Ohio St.3d 418, 421, 504 N.E.2d 37 (1986); *State v. Lane,* 60 Ohio St.2d 112, 121, 397 N.E.2d 1338 (1979).
>
> {¶33} In *Waller v. Georgia*, the Supreme Court established the test for determining whether a courtroom closure violates a criminal defendant's Sixth Amendment right to a public trial: "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), internal citation omitted. In the same opinion, the Supreme Court articulated the test as a four-factor analysis: [(1)] the party seeking to close a public hearing must advance an overriding interest that is likely to be prejudiced, [(2)] the closure must be no broader than necessary to protect that interest, [(3)] the trial court must consider reasonable alternatives to closing the proceeding, and [(4)] it must make findings adequate to support the closure. *Id.* at 48. Courts frequently call this the "*Waller* test."

{¶34} The Supreme Court of Ohio in *Drummond* subsequently modified the *Waller* test in cases where the trial closure is partial rather than total. In *Drummond*, the court concluded "[w]hen a trial judge orders a partial, as opposed to a total, closure of a court proceeding, a 'substantial reason' rather than *Waller's* 'overriding interest' will justify the closure." 111 Ohio St.3d 14, 53, 2006-Ohio-5084, 854 N.E.2d 1038.

{¶35} In the instant case, prior to the testimony of Dr. Lee, the deputy coroner who autopsied both victims, the following statement was made by the trial court:

> The time is now 10:04 a.m., and we have reconvened in Case 21-CR-0013. The defendant is present accompanied by counsel as is the prosecuting attorney and assistant prosecutor. All 12 members of the jury are present as well as the two alternates. It's at this time that the state has advised the court they will call Dr. Lee who is a forensic pathologist. Once Dr. Lee comes in and takes the witness stand, I just want to note for the record the doors will be locked so that there can be no further entrance during his testimony.

T. 252.

{¶36} The closure of the courtroom was a partial closure because it was closed only during the testimony of one witness, and it appears from the record that the trial court prevented persons from entering and leaving during the testimony but did not clear the courtroom altogether. After Lee's testimony concluded, the trial court stated the courtroom could now be unlocked, and appellee asked for a moment to "alert the victim's family that Dr. Lee's testimony is concluded and that we're moving onto the next phase of the trial." T. 280-281.

{¶37} The trial court offered no explanation for closure of the courtroom, and neither party objected. The trial court did not make any findings or otherwise address the *Waller* and *Drummond* factors, supra. Appellant argues the sua sponte closure of the courtroom violated his right to a public trial and requires reversal.

{¶38} We note the Ohio Supreme Court recently decided a case which originally arose in this District, directly addressing the nature of structural error when a defendant is denied the right to a public trial due to a courtroom closure. In *State v. Bond*, 2022-Ohio-4150, the Ohio Supreme Court found that a public-trial violation may

occur, and the violation may be structural error, but in the absence of objection by the defendant, such error may not require correction.

{¶39} *Bond* is instructive to our analysis of the instant case. We do find a public-trial violation because the record does not establish the trial court made any *Waller* analysis, or offered any explanation, for the *sua sponte* closure of the courtroom. *State v. Bond*, 2022-Ohio-4150, ¶ 15. Neither party objected to the closure. While a public-trial error is structural error, it is not necessarily correctible error when the defendant failed to object. *Id.,* ¶ 16.

{¶40} The Court found that a plain-error analysis must be applied to determine whether the public-trial violation affected the defendant's substantial rights, and that the appropriate test is not whether the violation affected the outcome of the trial because "a structural error may affect substantial rights even if the defendant cannot show that the outcome of the trial would have been different had the error not occurred." *Id.,* at ¶ 32. Nor, however, does structural error require automatic reversal. *Id.,* at ¶ 33.

{¶41} The issue is more subjective and requires an evaluation of the courtroom closure in the context of the entire trial. "[T]he final consideration in the plain-error analysis is whether correcting the error is required to prevent a manifest miscarriage of justice or whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*, citing *Olano*, 507 U.S. at 736, 113 S.Ct. 1770, 123 L.Ed.2d 508; *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

{¶42} The issue posed by the instant case is whether the public-trial violation in warrants correction. In *Bond*, the Ohio Supreme Court concluded the violation did not require correction:

> Here, the courtroom closure occurred during the state's presentation of evidence, after an eyewitness finished testifying. The courtroom closure was a partial one; the trial court permitted Bond's immediate family members and the victim's immediate family members to attend the remainder of the trial. According to the state, the courtroom was closed only to the two individuals involved in the hallway disruption during the court's recess. Bond has not asserted that any specific person attempted to enter the courtroom and was denied access. Although the court's order limiting access to the courtroom was effective through the end of the trial, Bond has not asserted that any harm resulted from the closure. For example, he has not

13

suggested that any of the trial participants failed to fulfill their duties appropriately during the remainder of trial or that the judge or prosecutor engaged in misconduct that went unnoticed because of the courtroom closure. The record indicates that the jurors were unaware of the judge's decision to limit courtroom access. While these factors might weigh differently in the context of a *Waller* analysis or if considered after an objection to the closure made in the trial court, we review the facts here in the context of a plain-error analysis, which means that Bond has the burden to show, within the plain-error framework, that the public-trial violation so affected the fairness of the proceeding as to require correction. Because Bond has not made that showing, we conclude that the public-trial violation in his trial did not rise to the level of a plain error that must be corrected.

*State v. Bond*, 2022-Ohio-4150, ¶ 37.

{¶43} In the instant case, closure of the courtroom was partial and access to the courtroom was limited for the testimony of one witness. Appellant has not asserted that anyone attempted to enter the courtroom and was denied access, and he has not described any harm resulting from closure of the courtroom during this testimony. *Id.* Appellant has the burden to show that the public-trial violation so affected the fairness of the proceeding as to require correction, but he makes no showing beyond the fact of the violation itself. *Id.* We thus conclude the public-trial violation did not rise to the level of a plain error that must be corrected. *Id.*

{¶44} Appellant's second assignment of error is overruled.

*State v. Young, supra.*

Respondent argues this claim is barred by procedural default in that there was no contemporaneous objection to the judge's action. The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

14

1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>                        . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).   A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule requiring contemporaneous objection to trial court error.  Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith*

*v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010). The Fifth District enforced the contemporaneous objection rule against Petitioner by reviewing the relevant Assignment of Error only for plain error.

An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

By failing to file a reply, Petitioner has foregone an opportunity to argue that this particular procedural default is excused by cause and prejudice. Therefore Ground Two is procedurally defaulted and should be dismissed on that basis.

**Ground Three: Denial of Due Process by Comment on Exercise of Right to Counsel**

In his Third Ground for Relief, Petitioner assert he was denied due process when the State elicited testimony that he had invoked his right to counsel. This claim formed Petitioner's Third Assignment of Error on direct appeal and the Fifth District decided it as follows:

> {¶45} In his third assignment of error, appellant argues that appellee's use of his videotaped statement to Andrews constitutes a *Doyle* violation, effectively using his right to remain silent against him. We disagree.

16

{¶46} The right to remain silent is conferred by the United States and the Ohio Constitutions. The privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' " *State v. Graber*, 95 N.E.3d 631, 641 (5th Dist. 2003) quoting *Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), internal citation omitted. The United States Supreme Court in *Miranda v. Arizona, supra,* detailed the well-known procedural safeguards, including the right to an attorney, to protect the privilege against self-incrimination. "A suspect's right to an attorney during questioning * * * is derivative of his right to remain silent." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 13 quoting *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (Rehnquist, J., concurring).

{¶47} In *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that use of a defendant's post-arrest, post-*Miranda* silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 16. In *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the United States Supreme Court held the use of a defendant's post-arrest, post-*Miranda* silence as substantive evidence of guilt violated due process. The State may not use a defendant's silence to lead the jury to the conclusion that innocent people speak to the police to clear up misunderstandings, while guilty people consult with their attorneys. *State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, 2012 WL 4100406, ¶ 42 citing *State v. Leach* at ¶ 32.

{¶48} In the instant case, appellant does not point to any overt reference by appellee to his post-arrest silence. Instead, he argues appellee's implication was indirect; by showing the videos of his interrogations, appellee effectively commented on his silence because he asked for counsel at the conclusion of the first interrogation and claimed not to remember the events of the murders. We find no evidence that appellee used appellant's rights to silence and counsel as evidence of guilt at any stage of the proceedings, and we find no authority applying *Doyle's* rationale under these circumstances. Nor does appellant point us to any such authority.

{¶49} The record reveals that appellant gave a recorded interview, then invoked his right to counsel; he then asked to speak to the detective again and gave a voluntary statement. Both statements

17

were Mirandized. Appellant's interviews were part of appellee's evidence at trial, but we are unable to find any commentary by appellee on appellant's invocation of his rights to silence and to counsel as evidence of guilt.

{¶50} Appellant did not assert a *Doyle* violation at trial, and we find none here. We find no evidence appellee affirmatively sought to use appellant's invocation of his right to counsel as proof of guilt; nor did appellee use the evidence for impeachment purposes. *State v. Edmonds*, 5th Dist. No. 17-CA-53, 2018-Ohio-2832, 117 N.E.3d 83, ¶ 22.

{¶51} Appellant's third assignment of error is overruled.

*State v. Young, supra.*

Here again the state court decided the relevant constitutional question on the merits. To prevail in habeas corpus, Petitioner must show the Fifth District's decision is an objectively unreasonable application of *Doyle*. He has failed to do so. In his brief on appeal, Petitioner argued the State implicitly violated *Doyle* by showing the video of Young's statement to the police during which he invoked his right to counsel, but he cites no other Supreme Court precedent holding there can be an implicit violation of *Doyle* when there is no comment on the invocation of right to counsel. Furthermore, the Fifth District also invoked the contemporaneous objection rule as to this Assignment of Error by finding there had been no objection at trial.

The Magistrate Judge concludes the Fifth District's application of *Doyle* was not objectively unreasonable and this Ground for Relief is barred by Petitioner's failure to make a contemporaneous objection. Ground Three should therefore be dismissed.

## Ground Four: Ineffective Assistance Of Trial Counsel

In his Fourth Ground for Relief, Petitioner asserts his trial attorney provided

constitutionally ineffective assistance by failing to object to "substantive violations of the Defendant's constitutional rights, where those objections would have likely led to a different outcome. . . ." As Respondent notes, Petitioner is limited on habeas review to those claims of ineffective assistance of trial counsel he made on direct appeal. Those were the failure to object to the temporary closure of the courtroom during the deputy coroner's testimony and the failure to raise a challenge under *Doyle*. Those two claims were raised in the Fourth Assignment of Error and the Fifth District decided that Assignment as follows:

> {¶52} In his fourth assignment of error, appellant incorporates the arguments raised in his second and third assignments of error, summarily arguing he received ineffective assistance of defense trial counsel. We disagree.

> {¶53} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009).

> {¶54} The United States Supreme Court discussed the prejudice prong of the *Strickland* test:

> > With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

19

*Id.*, at 687, 104 S.Ct. 2052.

{¶55} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶56} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Id.*

{¶57} Appellant summarily argues defense trial counsel was ineffective in failing to object to the *sua sponte* closing of the courtroom and to appellee's use of his videotaped interviews for the reasons cited in his second and third assignments of error. We overruled those assignments of error, and find counsel was not ineffective in failing to raise the stated objections. Even if the alleged errors were objectionable and counsel was deficient, the perceived deficiencies had no effect on the outcome of the trial.

¶58} Upon review we find there is no reasonable probability that the outcome of the trial would have been different had counsel made the argued objections. "Trial counsel is not ineffective for choosing, for tactical reasons, not to pursue every possible trial objection." *State v. West*, 5th Dist. No. 16 CA 11, 2017-Ohio-4055, 91 N.E.3d 365, ¶ 102, citing *State v. Raypole*, 12th Dist. Fayette No. CA2014-05-009, 2015-Ohio-827, ¶ 24.

{¶59} Appellant's fourth assignment of error is overruled.

*State v. Young, supra*.

The governing standard for ineffective assistance of counsel claims is found in *Strickland*

*v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the

20

> deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

To prevail on his Fourth Ground for Relief, then, Petitioner must show that the Fifth District's decisions was an objectively unreasonable application of *Strickland*. That he has failed to do. As to the deficient performance prong of *Strickland*, there are often good strategic reasons for failing to make an objection. Particularly with respect to the *Doyle* objection, raising that point would likely have called the jury's attention to Petitioner's invocation of his right to counsel, precisely the impression Petitioner wanted to avoid.

Petitioner also fails on the prejudice prong. As the Fifth District found, there was no proof of prejudice from either failure to object. As to the closure issue, there was no showing that anyone was in fact excluded. The Fourth Ground for Relief should be dismissed on the merits.

**Conclusion**

On the basis of the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this

22

conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

December 18, 2024.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #