# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

EDWARD L. YOUNG,

        Petitioner,  :  Case No. 2:24-cv-1564

  - vs -          District Judge Michael H. Watson
                Magistrate Judge Michael R. Merz

WILLIAM COOL, WARDEN, Ross
  Correctional Institution,

                             :
        Respondent.

## SUBSTITUTED REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Edward Young pursuant to 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 8, expanded to include State's Exhibits 79A and 79B), Respondent's Return of Writ (ECF No. 9), and Petitioner's Reply (ECF No. 24). Two prior Reports and Recommendations (ECF Nos. 15 and 20) have been withdrawn (ECF No. 25).

**Litigation History**

On February 1, 2021, a Coshocton County Grand Jury indicted Petitioner on two counts of aggravated murder and one count of having weapons while under disability. (Indictment, State Court Record, ECF No. 8, Ex. 1). The victims were Joshua Jones, Petitioner's brother-in-law (Count One) and Petitioner's spouse, Martha Young (Count Two). Each aggravated murder count

1

contained a firearm specification, a repeat violent offender specification, and a forfeiture of a weapon specification. *Id.* Petitioner initially pleaded not guilty, later changed his plea to not guilty by reason of insanity, and then withdrew the NGRI plea after the trial court disallowed it because he had refused to participate in a mental evaluation. A trial jury found Petitioner guilty on all counts and specifications, but the forfeiture and repeat violent offender specifications were dismissed post-verdict. Young was sentenced to consecutive terms of life imprisonment without the possibility of parole and three years for each of the firearm specifications (Judgment, State Court Record 8, Ex. 12).

Represented by new counsel, Petitioner appealed to the Ohio Fifth District Court of Appeals, raising the following Assignments of Error:

> 1. The trial court erred and deprived appellant of due process of law as guaranteed by the fourteenth amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of aggravated murder and having weapons while under disability as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.
>
> 2. The trial court erred to the prejudice of appellant by closing and locking the courtroom during his jury trial, in violation of his right to a public trial and due process of law pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution.
>
> 3. The trial court erred to the prejudice of appellant by permitting testimony at his jury trial in violation of *Doyle v. Ohio*, thereby depriving him of due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution.
>
> 4. Appellant's trial counsel was ineffective thereby depriving him of the right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

(Appellant's Brief, State Court Record, ECF No. 8, Ex. 14, PageID 83). The Fifth District

overruled these assignments of error and affirmed the conviction. *State v. Young,* 2022-Ohio-4726 (Ohio App. 5th Dist. Dec. 28, 2022). The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Young*, 169 Ohio St.3d 1491 (2023).

Young filed his Petition in this Court by depositing it in the prison mailing system on March 25, 2024 (ECF No. 1, PageID 15). He pleads the following Grounds for Relief:

> **Ground One:** The trial court erred and deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of aggravated murder and having weapons while under disability as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.
>
> **Ground Two**: The trial court erred to the prejudice of Appellant by closing and locking the courtroom during his jury trial, in violation of his right to a public trial and due process of law pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution.
>
> **Ground Three:** A criminal Defendant's right to due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution, is violated where the State elicits testimony reflecting the Defendant's invocation of his right to legal counsel.
>
> **Ground Four:** Trial Counsel was ineffective in failing to object to substantive violations of the Defendant's constitutional rights, where those objections would have likely led to a different outcome which is a denial of the right to due process and effective assistance of trial counsel, as guaranteed by the Sixth and Fourteenth Amendments of United States Constitution and the Ohio Constitution.

(Petition, ECF No. 1).

## Analysis

**Ground One: The Sufficiency and Weight of the Evidence**

In his First Ground for Relief, Young claims his convictions violated both the federal and the Ohio Constitutions because they are supported by insufficient evidence and are against the manifest weight of the evidence. Respondent concedes Young has preserved this claim for merits review by presenting it as an assignment of error on direct appeal. However, Respondent also argues that violations of the Ohio Constitution and the manifest weight claim are not cognizable in habeas corpus.

**Cognizability**

Federal habeas corpus is available only to correct **federal** constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Petitioner makes no argument under the Ohio Constitution in his Reply and this Report offers no analysis of that claim because it is not cognizable. The Reply also confines itself, without comment, to the insufficiency of evidence claim and does not make a manifest weight argument. The Sixth Circuit has held the manifest weight claim is also not cognizable under federal law.

4

*Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

**Sufficiency of the Evidence**

However, an allegation that a verdict was entered upon insufficient evidence does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020)(quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

5

> favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was

6

'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

On direct appeal, the Ohio Fifth District Court of Appeals found the following facts:

> {¶2} Appellant's wife, one of the victims in this matter, is Jane Doe[1]. Appellant and Jane lived at a property which abutted the property of one of Jane's brothers, John Roe. John is also one of the victims in this matter. John lived at his residence with his girlfriend, Mary, and Mary's children.
>
> {¶3} On January 4, 2021, Mary was working from home as a customer service associate for a call center. She was seated in an upstairs bedroom, in which John was also napping. Five of Mary's six children were also present in the residence. Around 5:00 p.m., Mary was on the phone with a customer when she heard a loud noise downstairs, as though someone was breaking in. She awakened John and sent him downstairs, armed.[1] Mary remained on the phone.
>
> {¶4} Mary recognized appellant's voice downstairs. She also heard John's voice, and Jane Doe's. The group was arguing. Mary heard the argument move outside the residence, then back in, and she heard several gunshots. She put the customer on hold and ran to investigate, first checking on her children in another upstairs bedroom.
>
> {¶5} As she proceeded downstairs, Mary saw appellant at the bottom of the stairs, next to John's body. Appellant was holding a pistol. Appellant said he "knew what John and Jane had done," and that he was not going to hurt Mary because he liked her. Mary yelled for her oldest Son to call 911.
>
> {¶6} In the meantime, Neighbor[2] was outside walking her dog. Neighbor testified that she saw appellant and his wife Jane in the front yard of John's residence and saw John in the doorway of his residence. All three entered the residence, arguing. She then heard several pops or bangs and saw Jane exit through the front door and collapse near a tree. Appellant exited the residence with a gun in his

---

[1] Why pseudonyms have been used in this opinion is not known.
[2] See footnote 1.

> hand and approached Jane and yelled something at her as she lay on the ground.
>
> {¶7} Neighbor then saw appellant run back to his own residence, leave momentarily in his car, and then return. He left again in his car, driving through the neighborhood and ending up in front of John and Mary's residence.
>
> {¶8} In the meantime, Mary's oldest Son was on the phone with the sheriff's department. Son observed appellant pull up in his car; appellant approached Son and told him to hang up the phone. Appellant took the phone from Son and tossed it. Appellant then approached Jane again, who was still on the ground, and attempted to remove something from her pocket. He then left again in his car. Son described the car to law enforcement. Son also observed appellant's four young children in the backseat of the car.
>
> {¶9} Sheriff's deputies intercepted appellant's car and tried to stop him, but appellant refused to comply and fled. He eventually crashed into another vehicle, disabling his own car. Appellant was apprehended without further incident and his children were safely recovered by law enforcement.
>
> {¶10} The next day, detectives questioned appellant and he eventually requested an attorney. Later the same day, however, he contacted detectives and voluntarily spoke to Detective Andrews. After being Mirandized, appellant told Andrews he had no recollection of the murders or the ensuing events. Appellant's statements were videotaped and introduced at trial.
>
> {¶11} Law enforcement processed the crime scene and collected evidence. The 9-millimeter firearm was recovered in a field on the route of appellant's flight from deputies. Ballistics testing established the firearm was used to shoot and kill both Jane and John, who died as direct results of their gunshot wounds. Appellant's DNA was found on the ammunition clip recovered with the firearm, and gunpowder residue was found on appellant's hands.

*State v. Young*, 2022-Ohio-4276 (Ohio App. 5th Dist. Dec. 26, 2022).

Deciding Petitioner's First Assignment of Error in light of these facts, the Fifth District wrote:

8

{¶20} In his first assignment of error, appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶21} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, *reconsideration denied,* 165 Ohio St.3d 1458, 2021-Ohio-4033, 176 N.E.3d 767, and *cert. denied,* 213 L.Ed.2d 1005, 142 S.Ct. 2766, citing *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Instead, it asks whether the evidence against a defendant, *if believed*, supports the conviction. *Id.,* citing *Thompkins* at 390, 678 N.E.2d 541 (Cook, J., concurring).

{¶22} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned, and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶23} Appellant was found guilty of two counts of aggravated murder pursuant to R.C. 2903.01(A), which states in pertinent part,

"No person shall purposely, and with prior calculation and design, cause the death of another." " 'Prior calculation and design' are not defined in the Revised Code but is more than just an instantaneous decision to kill; it encompasses planning 'a scheme designed to carry out the calculated decision to cause the death.' " *State v. Calvert*, 5th Dist. Guernsey No. 03CA19, 2004-Ohio-6366, ¶ 49, citing *State v. Jones,* 91 Ohio St.3d 335, 348, 2001-Ohio-57, 744 N.E.2d 1163, internal citations omitted. Prior calculation and design are considered "a more stringent element than premeditation." *Id., citing State v. Green,* 90 Ohio St.3d 352, 357, 738 N.E.2d 1208, internal citation omitted.

**\*4** {¶24} Appellant argues there is no evidence of prior calculation and design in the instant case; he did not recall the murders and his motive was unclear, and he asserts that "* * *the shootings appear to be the instantaneous result of an argument between the three parties." Brief, 4.

{¶25} In *State v. Taylor*, 78 Ohio St.3d 15, 18–20, 676 N.E.2d 82, 88–89 (1997), the Ohio Supreme Court considered the meaning of "prior calculation and design," noting the following at page 19:
* * * *

> According to [the 1973 Technical Committee Comment to Am.Sub.H.B. No. 511, a Legislative Service Commission summary], "the phrase 'prior calculation and design' [was employed] to indicate studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim. Neither the degree of care nor the length of time * * * are critical factors in themselves, but they must amount to more than momentary deliberation."

> In *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, at paragraph one of the syllabi, we agreed that " 'prior calculation and design' is a more stringent element than the 'deliberate and premeditated malice' which was required under prior law." The General Assembly's apparent intention "was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." *Id.,* 56 Ohio St.2d at 11, 10 O.O.3d at 6, 381 N.E.2d at 193. Also, in *Cotton,* at paragraph two of the syllabus, we held that "[i]nstantaneous deliberation is not sufficient to constitute 'prior calculation and design.' "

* * * *

10

In *State v. Jenkins,* 48 Ohio App.2d at 102, 2 O.O.3d at 75, 355 N.E.2d at 828, the court of appeals found three factors important in determining whether prior calculation and design exists: (1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost instantaneous eruption of events"?

> Our review of the preceding cited cases convinces us that it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of "prior calculation and design." Instead, each case turns on the particular facts and evidence presented at trial.

*State v. Taylor*, 78 Ohio St.3d 15, 19, 676 N.E.2d 82 (1997).

{¶26} In the instant case, appellant knew both victims well, and his relationship with Jane had become strained over appellant's belief that Jane had an incestuous relationship with John, an allegation he made to Andrews and to which he obliquely referred when Mary found him at the bottom of the steps, standing over John's body.

{¶27} The evidence admitted at trial also showed deliberation and planning. Appellant told Andrews he recalled Jane leaving the house in the direction of John's house; appellant re-entered the residence before following her. Police found an empty firearm case in appellant's house with the make, model, and serial number matching the weapon that killed Jane and John.

{¶28} The final issue is whether appellant acted with "more than momentary deliberation," or whether the act was "an almost instantaneous eruption of events." *Taylor,* supra. * * * *. Appellant retrieved the weapon, followed Jane to John's residence, and argued with both before he shot them. "Prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes," *State v. Coley,* 93 Ohio St.3d 253, 264, 754 N.E.2d 1129 (2001), as long as the killer's actions "went beyond a momentary impulse and show that he was determined to complete a specific course of action," *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 46. Appellant fired ten shots inside John's residence, and one was to John's head. A shot to the head at close range "bespeaks a calculated, execution-style murder." *State v. Campbell*, 90 Ohio St.3d 320, 330, 738 N.E.2d 1178, 1193 (2000), citing *State v. Palmer,* 80 Ohio St.3d 543, 570, 687 N.E.2d 685 (1997).

11

> {¶29} Although "the events here took place in short order," a juror could reasonably infer appellant "had adopted and carried out a plan to kill." *Jones,* supra, 2021-Ohio-3311, at ¶ 26. Appellee presented sufficient evidence of prior calculation and design, and the jury did not lose its way in finding appellant guilty of aggravated murder.
>
> {¶30} Appellant's convictions upon two counts of aggravated murder are supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.

*State v. Young, supra.*

Young asserts this decision of the Fifth District was contrary to clearly established federal law as embodied in Supreme Court precedent (Traverse, ECF No. 24, PageID 810 *et seq.*).  He claims "that no rational trier of fact court have found the essential elements of Aggravated Murder beyond a reasonable doubt." *Id.* at PageID 811.

Young argues that because he was not charged with burglary, "that eliminates any argument that the Petitioner chose the murder cite [sic] by forcing his way into John Doe's home with the plan to kill." *Id.* at PageID 812.  That is a complete *non sequitur*.  A prosecutor may have many reasons for not charging a person with a particular crime.  Here adding burglary to the two murder charges would have unnecessarily complicated the trial.

Young next argues "nor did the State present evidence, that the Petitioner['s] sole purpose for being present at John Doe's house at that moment was to: (1) purposely cause the death of John Doe, and (2) with prior calculation and design." *Id.* at PageID 813.  That is hardly surprising since the only person who could offer direct evidence on those two elements was Young himself.  The State had to rely on circumstantial evidence, one particularly compelling piece of which was the execution-style killing of "John."

Young contests the inference that he returned to his own residence to retrieve the gun used

in the shooting by pointing out that the gun was owned by his wife and "it is plausible that Jane Doe [Martha] had her own gun on her person just before the shooting." PageID 814. This is pure speculation; it is not supported by any testimony.

Young notes that Detective Andrew admitted there was no eyewitness to the shooting. PageID 814-15. On this testimonial basis he argues "With no eyewitness to the actual shooting, no one can definitively state what led to the shooting." *Id.* at PageID 815[3].

Because there were no living eyewitnesses, the State had to establish its case by circumstantial evidence. However, "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992); *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020). "[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co.*, 352 U.S. 500, 508, n. 17(1957).

In attempting to rebut the findings of fact of the Fifth District, Young relies on the sworn statement of Coshocton County Sheriff's Office Detective Sgt. Seth Andrews (Reply, ECF No. 24, PageID 819). This Court declined to expand the record (ECF No. 25) to include that statement

---

[3] This argument reminds one of the aphorism attributed to celebrated defense attorney Jake Ehrlich who reportedly said he always preferred to defend murder cases because there was always one less witness. Here of course the murderer eliminated all possible eyewitnesses.

because it was not admitted into evidence and is thus barred by *Cullen v. Pinholster,* 563 U.S. 170 (2011). *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).

The State explained the motive for the shootings by relying on the testimony of the male victim's wife that Petitioner's relationship with his own wife was strained because of his belief she was engaged in an incestuous relationship with her brother, the male victim. Petitioner argues the spousal testimony is too vague to support that motive (Reply, ECF No. 24, PageID 822). But the exact motive for the shooting is not an element of the crime and the jury could readily infer that the relationship was strained: he shot her to death!

Applying the *Jackson v. Virginia* standard, the Magistrate Judge concludes that a rational juror could readily have concluded Petitioner shot both victims to death. Ample direct testimony supports his presence at the crime scene; forensic evidence supports his handling of the murder weapon. Intent to cause death can readily be inferred from the use of a firearm, especially in the case of the direct shot to the head of the male victim. Under the Ohio precedent cited by the Fifth District, there was ample time for Petitioner to plan the shooting so as to satisfy the prior calculation element. That court reasonably applied *Jackson v. Virginia*. Petitioner's First Ground for Relief should be dismissed on the merits as to the insufficient evidence claim and for non-cognizability as to the manifest weight and Ohio Constitution claims.

**Ground Two: Denial of a Public Trial**

In his Second Ground for Relief, Petitioner claims he was denied his right to a public trial

14

when the trial court closed the courtroom. In his Reply, Petitioner has withdrawn this Ground for Relief (ECF No. 24, PageID 828).

**Ground Three: Denial of Fair Trial by Eliciting Invocation of Right to Counsel**

In his Third Ground for Relief, Petitioner asserts he was denied a fair trial when the State elicited testimony that he had invoked his right to counsel in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). Although there was no objection at trial to the playing of the videotaped interview which is the supposed evidence of the *Doyle* violation, the Fifth District did not enforce this procedural default, but proceeded to decide the issue with respect to the videotape on the merits. Merits review of that part of Ground Three is not barred by the failure to object.

The Fifth District decided the relevant assignment of error on the merits, writing:

> ¶45} In his third assignment of error, appellant argues that appellee's use of his videotaped statement to Andrews constitutes a *Doyle* violation, effectively using his right to remain silent against him. We disagree.
>
> {¶46} The right to remain silent is conferred by the United States and the Ohio Constitutions. The privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' " *State v. Graber*, 95 N.E.3d 631, 641 (5th Dist. 2003) quoting *Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), internal citation omitted. The United States Supreme Court in *Miranda v. Arizona, supra,* detailed the well-known procedural safeguards, including the right to an attorney, to protect the privilege against self-incrimination. "A suspect's right to an attorney during questioning * * * is derivative of his right to remain silent." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 13 quoting *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (Rehnquist, J., concurring).

15

{¶47} In *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that use of a defendant's post-arrest, post-*Miranda* silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 16. In *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the United States Supreme Court held the use of a defendant's post-arrest, post-*Miranda* silence as substantive evidence of guilt violated due process. The State may not use a defendant's silence to lead the jury to the conclusion that innocent people speak to the police to clear up misunderstandings, while guilty people consult with their attorneys. *State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, 2012 WL 4100406, ¶ 42 citing *State v. Leach* at ¶ 32.

{¶48} In the instant case, appellant does not point to any overt reference by appellee to his post-arrest silence. Instead, he argues appellee's implication was indirect; by showing the videos of his interrogations, appellee effectively commented on his silence because he asked for counsel at the conclusion of the first interrogation and claimed not to remember the events of the murders. We find no evidence that appellee used appellant's rights to silence and counsel as evidence of guilt at any stage of the proceedings, and we find no authority applying *Doyle's* rationale under these circumstances. Nor does appellant point us to any such authority.

{¶49} The record reveals that appellant gave a recorded interview, then invoked his right to counsel; he then asked to speak to the detective again and gave a voluntary statement. Both statements were Mirandized. Appellant's interviews were part of appellee's evidence at trial, but we are unable to find any commentary by appellee on appellant's invocation of his rights to silence and to counsel as evidence of guilt.

{¶50} Appellant did not assert a *Doyle* violation at trial, and we find none here. We find no evidence appellee affirmatively sought to use appellant's invocation of his right to counsel as proof of guilt; nor did appellee use the evidence for impeachment purposes. *State v. Edmonds*, 5th Dist. No. 17-CA-53, 2018-Ohio-2832, 117 N.E.3d 83, ¶ 22.

{¶51} Appellant's third assignment of error is overruled.

*State v. Young, supra.*

Young attempts to rebut the Fifth District's findings by pointing to his Reply Brief on direct appeal where he asserts the prosecutor was adverting to his request for counsel as a

> ploy to later argue to the jury that the Petitioner wanting [sic] to stop talking and requested an attorney that this somehow meant the Petitioner was guilty. This line of questioning was unnecessary especially when the interrogation video was just shown to the jury. Furthermore, it's undisputable, that the prosecution wanted the jury to imply that the Petitioner was guilty by refusing to speak further to the detective.

(Reply, ECF No. 24, PageID 832).

This argument misrepresents the delicate context presented when a Mirandized suspect talks to the police, then invokes his right to counsel, then again attempts to speak to the police, which is what happened here.  The Fifth District set out the sequence in ¶ 49.  Young makes no claim that he not given his *Miranda* warnings before his first statement.  As he was entitled to do, he invoked his right to counsel at some point, then resumed speaking voluntarily and then again invoked his right to counsel.  Sgt. Andrews testified that at that point he (Andrews) terminated the interview because Young had invoked his right to counsel.  The prosecutor had a right to let the jury know why the interview was terminated lest it infer Sgt. Andrews was unwilling to listen to Petitioner.  As a matter of law, Andrews had a duty to stop when the right to counsel was invoked.  Apparently after that Young persisted in his right to silence as he did not testify at trial.  Petitioner has not rebutted the findings of the Fifth District as to the content of the interviews with clear and convincing evidence.

However, Petitioner's Third Ground for Relief is broader than the claim made in the parallel Assignment of Error[4] on direct appeal.  In his Third Ground for Relief as he argues it in

---

[4] Young argues in his Reply: "The Petitioner's *Doyle* claim was not submitted to the state court solely on the interview video alone as the Court of Appeals suggested. The Petitioner's reply brief clearly and convincingly establishes that the Petitioner referenced and pointed to the trial record as evidence and basis of his *Doyle* claim." (ECF No. 24, PageID 835). In Ohio courts one cannot raised new assignments of error by inserting them in a reply brief.

17

his Reply, he claims the *Doyle* violation also occurred in the prosecutor's closing argument. Beginning at PageID 833, he argues about what the prosecutor said in closing argument as drawing an implication for the jury from his post-*Miranda* silence.

There was no contemporaneous objection made to the closing argument and it was not part of the relevant assignment of error on direct appeal. Thus the Fifth District was not asked to evaluate the prosecutor's closing argument for a *Doyle* violation and does not speak to that point. Had that been included in the relevant assignment of error, it is probable the Fifth District would have found it procedurally defaulted for the lack of a contemporaneous objection. In any event it has not been preserved for habeas corpus review because Young did not exhaust available state court remedies by raising it on direct appeal. Ground Three should therefore be dismissed.

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Petitioner claimed he was deprived of the effective assistance of trial counsel. However, he has withdrawn this Ground for Relief in his Reply (ECF No. 24, PageID 837).

**Part Two of the Reply**

In Part Two of his Reply (PageID 839-59), Petitioner sets forth his Objections to the Magistrate Judge's Reports and Recommendations that were pending at the time he filed the Reply, July 24, 2025, that is ECF Nos. 15 and 20. Those Reports have been withdrawn (ECF No. 25). Petitioner will have the full opportunity provided by Fed.R.Civ.P. 72 to file objections to this

18

Report.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 13, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.